**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kenny ROPER, William Price, William Belcher, Jim Childress, William Green, Defendants-Appellants.**

No. 88-7298.

United States Court of Appeals, Eleventh Circuit.

June 6, 1989.

J. Paul Lowery, Montgomery, Ala., for Roper, Belcher & Price.

John T. Kirk, Montgomery, Ala., for Childress.

Bob E. Allen, Montgomery, Ala., for Green.

Algert S. Agricola, Jr., Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

---

\* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

HATCHETT, Circuit Judge.

In this reverse-sting marijuana possession with intent to distribute case, we affirm the convictions and judgments as to all appellants.

FACTS

Between 1980 and 1985, Rebecca Lynn "Becky" Garcia, Jim Childress, and Kenny Roper executed six to ten marijuana transactions, each involving between one hundred and five hundred pounds of marijuana.

The transactions continued in July, 1986, after Garcia pleaded guilty to four counts of trafficking cocaine, one count of trafficking heroin, one count of conspiracy to traffic heroin, one count of trafficking marijuana, one count of racketeering, and one count of conspiracy to assist in an escape. As a condition of her plea bargains with the United States and the state of New Mexico, Garcia supplied the names of people all over the United States to whom she had provided drugs, including Childress and Roper.

Special Agent Dennis Borst of the Drug Enforcement Administration, United States Department of Justice (DEA), Las Cruces, New Mexico, instructed Garcia to reestablish contact with Childress and Roper. Garcia contacted Childress and attempted to persuade him to purchase drugs from her in New Mexico. Childress indicated that he was interested in the transaction, but medical problems prevented him from traveling such a long distance. Garcia offered to deliver the drugs to Childress in Alabama. Childress agreed, and DEA agents in Mobile, Alabama, were notified.

On July 29, 1987, Garcia and Borst met with Special Agent Douglas Lamplugh, DEA Mobile, Alabama, in Mobile. Garcia and Lamplugh planned a 1,000-pound marijuana reverse sting operation. (In a reverse sting, the government organizes the sale of contraband.) Garcia told Childress that she would be in Montgomery, Alabama, on July 30, 1987, with her partner to complete the marijuana sale.

On July 30, 1987 Garcia traveled to Montgomery, Alabama, to meet Childress and Roper. Garcia, Agent John Pigott, of the Mobile County Sheriff's Office, Mobile, Alabama, Drug Enforcement State and Local Task Force, and Special Agent Gary Oetjen, DEA Mobile, Alabama, obtained room 108 at the Budgetel Motel on the East Bypass in Montgomery, Alabama. Pigott played the role of a large-scale supplier, smuggler, and importer of marijuana from New Orleans, Louisiana, and Oetjen played the role of Pigott's driver, operating a U-Haul truck containing seventeen bales of marijuana. Oetjen and Pigott set up audio and video surveillance in room 108 prior to the meeting.

After reaching Montgomery, Childress met with Garcia prior to meeting with Oetjen and Pigott. Garcia then introduced Childress to Oetjen and Pigott. After some discussion of details, Oetjen and Childress left the room, walked to the U-Haul truck in the Budgetel parking lot, and viewed the marijuana. Upon returning to the room, Childress indicated that he could not purchase a thousand pounds of marijuana, and indicated that he wanted to split the load or take a portion of the load on credit. The government agents refused these arrangements, and Childress left without any transaction being completed.

On July 31, 1987, Oetjen, Pigott, Garcia, Childress and Roper met again at the Budgetel Motel. Childress stated that a man in Mobile, Alabama, wanted to purchase 300 pounds of the marijuana; however, he wanted Roper to inspect it. Oetjen and Roper walked to the adjoining Laquinta Hotel parking lot, entered the truck, and inspected the marijuana. The parties agreed to reconvene in Mobile, Alabama, for further negotiations. Pigott agreed to have the marijuana in Mobile, Alabama, by 11 p.m.

At 11 p.m., Garcia and Pigott met Childress and Roper at the Waffle House in Mobile, Alabama. Childress mentioned that an unnamed person from Mobile, Alabama, would finance his purchase of the entire 1,000 pound marijuana load for $240,000. By arrangement, Pigott and

Garcia met Roper and an unnamed white male at the Grand Bay Truck Stop on I–10 later that evening. Childress was not with them. Because satisfactory arrangements could not be made on how to conduct the exchange, Pigott and Garcia terminated the discussions.

During the next few months, Childress and Garcia continued to discuss marijuana purchases by telephone. On October 29, 1987, Garcia made arrangements for Pigott to meet Childress in Montgomery, Alabama. Prior to the meeting, Lamplugh and Pigott set up video and audio recording devices in the Budgetel Motel room where the meeting took place. The discussion between Pigott and Childress focused on how to finance the purchase of the marijuana. Because Childress did not have sufficient cash, Pigott agreed to accept a promissory note secured by a real estate mortgage as security for later payment of the purchase price of the marijuana. Childress agreed to pay the balance from funds generated by selling the marijuana.

On November 17, 1987, Pigott again met Childress at the Budgetel Motel in Montgomery, Alabama, to finalize the details of the marijuana transaction. Law enforcement officials recorded the meeting with video and audio equipment. As arranged in earlier telephone conversations, Childress produced $25,000 in $100 bills and a promissory note secured by a warranty deed to real property. Childress then left the room and returned a few minutes later with his off-loaders, William Green, William Belcher, and William Price. Pigott briefed Green, Belcher, and Price on the procedure to be followed in off-loading the marijuana from the airplane, which was to arrive shortly at a nearby private landing strip.

At approximately 3:30 p.m., Lamplugh telephoned Pigott and advised him that the plane loaded with marijuana was about to land, which signaled Pigott that law enforcement officers were in place at the landing strip. Pigott rode to the landing strip with Childress, in Childress's truck, followed by Price and Belcher, each driving a vehicle. Green rode with Belcher. Upon arrival at the airstrip, Lamplugh informed Pigott, Childress, Price, Belcher, and Green that the airplane had landed and was in the hangar. As the convoy approached the hangar, law enforcement officers converged on the vehicles from a side door to the hangar, arresting Childress, Green, Belcher, and Price. Roper later surrendered to federal authorities.

## PROCEDURAL HISTORY

The grand jury charged Childress, Roper, Green, Belcher and Price with conspiracy to possess with intent to distribute approximately 1,000 pounds of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I). The grand jury also charged Childress with unlawful use of a communication facility to commit a felony, in violation of 21 U.S.C. § 843(b) (Counts II through VII). The jury found the appellants guilty as charged. The district court sentenced each appellant to a term of incarceration.

## CONTENTIONS

All appellants contend that the government produced insufficient evidence to support their convictions for conspiracy, and that the district court erred in denying their motions for acquittal, in denying their motions for mistrial, refusing to give a requested jury charge, and in giving an improper supplemental jury instruction.

Roper, Price, and Belcher contend that the district court erred in denying their motions for severance. Belcher also contends that he has been denied effective assistance of counsel, that certain evidence was admitted without proper predicate, and that he was denied the right to offer a duress defense.

## ISSUES

The issues on appeal are sufficiency of the evidence to support the jury's verdict for conspiracy to possess marijuana with intent to distribute and the alleged trial

errors previously mentioned.[1]

## DISCUSSION

### Sufficiency of the Evidence

Childress argues that the conspiracy must be divided into two segments. The first segment encompasses the period to and including July 31, 1987, the date of the terminated plan. The second segment would begin August 5, 1987, and end November 16, 1987, one day prior to the arrest of all appellants. Childress asserts that during the first segment of the conspiracy, he and Roper had no money; consequently, no conspiracy existed because no agreement was ever reached.

Childress also argues that during the second segment of the conspiracy, from July 31 through the arrest, he dealt exclusively with Garcia and Pigott; Roper did not participate. Additionally, Childress asserts that Garcia enticed him to purchase the 1,000 pounds of marijuana; therefore, any conspiracy that developed was due to coercion.

Roper contends that he was not a member of the conspiracy. Roper adopts Childress's conspiracy division theory and argues that although he participated in activities of the first segment, those activities were not a part of a conspiracy because neither money nor contraband was exchanged. Roper also argues that his conviction of conspiracy should be reversed, because no evidence exists to connect him to the second conspiracy.

Price, Belcher, and Green argue that no evidence exists to prove that they agreed to join a conspiracy, and they only knew they would be unloading an airplane containing a cargo that would weigh approximately 1,000 pounds.

■ In determining challenges to the sufficiency of evidence in a criminal case, we must determine whether the evidence, when viewed in the light most favorable to the government, and accepting reasonable inferences and credibility choices by the fact-finder, would enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *United States v. Monroe,* 866 F.2d 1357, 1365 (11th Cir.1989). To support a conviction for a conspiracy, the government must prove that two or more persons agreed to commit a crime, that the defendant knew of the agreement, and that he or she voluntarily became a part of the conspiracy. *United States v. Monroe,* at 1365.

■ Participation in a conspiracy may be proved by direct or circumstantial evidence. *United States v. Gonzalez,* 810 F.2d 1538, 1542 (11th Cir.1987). Once a conspiracy has been established involving a defendant, it is presumed to continue unless and until the defendant proves, by showing affirmative acts, that the conspiracy was terminated or that he withdrew from it. *Hyde v. United States,* 225 U.S. 347, 369–70, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912). The burden is on the defendant to prove he has withdrawn from a conspiracy. *United States v. Wentland,* 582 F.2d 1022, 1025–26 (5th Cir.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979).

■ Once having joined a conspiracy and not having withdrawn, the conspirator cannot insulate himself from the actions of his co-conspirator. *United States v. Bobo,* 586 F.2d 355, 370 n. 20 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979). A defendant may be found guilty of conspiracy even if he did not join it until after its inception, and even if he played only a minor role in the total scheme. *United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir.1980) (in banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). *See United States v. Walker,* 720 F.2d 1527 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984) (where the court inferred that defendants understood their purpose was to consummate an illegal narcotics deal where they arrived at a site and

---

1. Appellants contend that the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–998, which established the sentencing guidelines is unconstitutional. The appellants' attack on the consti-tutionality of the sentencing guidelines is moot. *See Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding the constitutionality of the sentencing guidelines).

began unloading bales of marijuana from the trunk of one vehicle into the trunk of another).

■ Evidence before the jury showed that on July 31, 1987, Roper inspected the marijuana and brought a person to the truck stop to evaluate the quality of the marijuana. Evidence also showed that Green, Price, and Belcher were aware that they were to unload a 1,000–pound cargo of marijuana because Agent Pigott notified them that they would be unloading marijuana when he briefed them at the Budgetel Motel.

Reviewing the record and the evidence in light of applicable standards, we hold that sufficient evidence exists to convict all appellants of conspiracy to possess with intent to distribute marijuana.

### Motion for Acquittal

Because we hold that sufficient evidence exists to support the jury's verdict of guilty on the appellants' conspiracy to possess with intent to distribute charge, the appellants' contention that the district court erred in refusing to grant judgments of acquittal in light of the insufficiency of the evidence against them is meritless. *See United States v. Rackley,* 742 F.2d 1266, 1271 (11th Cir.1984).

### Denial of Mistrial

Childress and Roper contend that they were unfairly prejudiced because of Garcia's testimony concerning her dealings with them in 1980; thus, the district court should have granted their motion for mistrial. The government contends that the evidence of drug deals between Childress, Roper, and Garcia were relevant, probative, and not unfairly prejudicial. The government argues that the testimony was properly admitted under Fed.R.Evid. 404(b), and that the probative value of this evidence was enhanced by Childress's defense of entrapment.

■ To determine whether the introduction of extrinsic offense evidence constitutes reversible error under Fed.R.Evid. 403 and 404(b), we must consider (1) whether the extrinsic offense evidence is relevant to an issue other than the defendant's character, and (2) whether the evidence possesses probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Fed. R.Evid. 403. *United States v. Walther,* 867 F.2d 1334, 1343 (11th Cir.1989) (citing *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (in banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)). Although the government normally may not introduce evidence of a defendant's predisposition to engage in criminal activity, it may do so once a defendant submits evidence which raises the possibility that he was entrapped. *Walther,* 867 F.2d at 1343 (citing *United States v. Salisbury,* 662 F.2d 738, 741 (11th Cir.1981), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982)). The introduction of extrinsic offense evidence is a reliable method of proving the criminal predisposition needed to rebut the allegation of entrapment. *United States v. Salisbury,* 662 F.2d at 741.

The government offered Garcia's testimony not to demonstrate Childress and Roper's bad character, but to demonstrate predisposition. The first prong of *Beechum* is thereby satisfied. Also, a review of the record reveals that the prejudicial nature of the evidence does not outweigh its probative value, thereby satisfying the second prong of *Beechum.*

■ The decision whether to grant a mistrial is within the sound discretion of the district court and will not be reversed absent a showing that the district court abused its discretion. *United States v. Cousins,* 842 F.2d 1245, 1247 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 139, 102 L.Ed.2d 111 (1988). We hold that the district court's refusal to grant a mistrial in this case was not an abuse of discretion.

### Severance

■ Roper contends that the district court erroneously denied his motions for severance. Roper argues that he was gravely prejudiced by an abundance of evidence regarding alleged criminal activities

involving unrelated transactions to purchase large quantities of marijuana from Garcia in the state of New Mexico. The government counters, arguing that the trial court instructed the jury to consider each appellant and each charge separately.

Defendants jointly indicted should be so tried. *United States v. Marszalkowski*, 669 F.2d 655, 660 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982). An exception to this rule may be enforced where the joinder would cause a defendant undue prejudice. *United States v. Marszalkowski* at 660; Fed.R.Crim.P. 14.[2] In determining whether to grant or deny a motion for severance, "the trial judge is empowered to exercise sound discretion in balancing possible prejudice to defendant against governmental concern for judicial economy." *United States v. Marszalkowski* at 660. Inherent in every joint trial is some degree of prejudice and bias, but "only in the event such prejudice appears to be compelling does severance become warranted." *United States v. Marszalkowski* at 660 (citing *United States v. Perez*, 489 F.2d 51, 65 (5th Cir. 1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974)).

The Eleventh Circuit applies the following test for assessing the existence of "compelling prejudice:"

> Whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

**2.** *Fed.R.Crim.P. 14 provides, in pertinent part:* [i]f it appears that a defendant is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires ...

*United States v. Marszalkowski* at 660 (citing *Tillman v. United States*, 406 F.2d 930, 935 (5th Cir.1969)).

In light of the above standard and the record, the district court did not abuse its discretion in denying Roper's motion for severance.

### Denial of Instruction on Lesser Included Offense

The appellants contend that the district court erred by failing to instruct the jury on the lesser included offense of conspiracy to possess marijuana. The government argues that due to the quantity of marijuana involved, it was unnecessary for the district court to instruct the jury on the lesser included offense.

The appellants' contention is meritless. The evidence presented during the trial indicated that the appellants negotiated for a thousand pounds of marijuana. Because of the large quantity involved, it is inconceivable that the marijuana was intended for the appellants' personal consumption. It was therefore unnecessary for the district court to instruct the jury on the lesser included offense. *United States v. Hirst*, 668 F.2d 1180, 1184 (11th Cir.1982). Accordingly, we hold that the district court committed no error in refusing to instruct the jury on the offense of conspiracy to possess marijuana.

### Supplemental Instruction

During the deliberations, the jury posed a question: "If a defendant is not continuously involved, can he be convicted according to Count I?" The district court responded orally:

> One who willfully joins a conspiracy that is existing is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy. The extent of any defendant's participation, moreover, is not determinative of his guilt or innocence. A defendant may be convicted as a conspirator even

though he may have played only a minor part in the conspiracy. So if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in the plan on one occasion that is sufficient to convict him for conspiracy, even though he had not participated before and even though he played only a minor part. However, if a person charged as a conspirator is just an observer or spectator, if he does not participate in the plan, if he doesn't agree to it, he's not a conspirator and he may not be convicted of conspiracy.

Appellants argue that the oral instruction prejudicially and unfairly responded to the jury's question. The government argues that the court did not have to give all of the conspiracy instructions again, and the instruction properly and clearly stated an answer to the jury's question.

An appellate court must examine the entire jury charge and determine whether, taken as a whole, the issues and law presented to the jury were adequate. *United States v. Abravaya*, 616 F.2d 250 (5th Cir.1980). We find that the district court's oral instruction, combined with its previous written instructions, adequately presented the issues and the law to the jury. Accordingly, the district court committed no error.

### Effective Assistance of Counsel

■ Belcher contends that the existing facilities at the Montgomery City Jail denied him assistance of counsel as guaranteed under the sixth amendment to the Constitution of the United States. Belcher asserts that he and his counsel were required to make public disclosures in loud voices by communication over a telephone and through a glass window and steel door. Belcher avers that other prisoners and law enforcement officers heard every detail of his defense.

To prevail on this claim that his sixth amendment rights were violated due to the Montgomery City Jail's facilities for

client/counsel interviews, Belcher must prove that: (1) tainted evidence existed in his case; (2) or, his defense strategy was communicated to the prosecution; or, (3) the government purposefully intruded on his case. *See Weatherford v. Bursey*, 429 U.S. 545, 558, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977). Belcher has failed to make any of these showings. Accordingly, we hold that Belcher's sixth amendment right to counsel was not violated.[3]

### Admission of Evidence

■ Appellants Roper, Price, and Belcher contend that certain evidence was improperly admitted on the basis of an inadequate predicate. This evidence consists primarily of tapes of telephone calls and videotapes of meetings.

Determinations of admissibility of evidence rests largely within the discretion of the district court and will not be disturbed on appeal absent a clear showing of an abuse of discretion. *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983). The district court did not abuse its discretion in admitting the contested evidence.

### Limited Cross–Examination

■ Belcher contends that the district court erroneously and prejudicially limited his counsel's cross-examination of Agent Pigott, thereby violating his sixth amendment guarantee of the right to confront the witnesses against him.

The government argues that the cross-examination at issue concerned Agent Pigott's possession and training in the use of firearms, and was irrelevant to the defense of duress. *See United States v. Blanco*, 754 F.2d 940 (11th Cir.1985) (to establish a defense of duress, defendant must show that he performed the unlawful act because (1) he was under an immediate threat of death or serious bodily injury, (2) he had a well-founded fear that the threat would be carried out, and (3) he had no reasonable opportunity to escape).

---

**3.** This holding is not intended to approve or disapprove of the jail's facilities. It is a holding

based solely on the proof submitted in this case.

The government asserts that Belcher's counsel's questions as to whether Agent Pigott ever had to use a weapon in an arrest were irrelevant to the defense of duress. Further, the government notes that the district court properly instructed the jury on the defense of duress and coercion.

The district court did not abuse its discretion in limiting Belcher's counsel's cross-examination.

## CONCLUSION

We affirm the convictions and judgments as to all the appellants.

AFFIRMED.