937 F.2d 604
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Guillermo MORAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sandra Filbert AMOS, Defendant-Appellant.
 Nos. 90-5024, 90-5025.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1990.
Decided July 12, 1991.
As Amended Aug. 14, 1991.
As Amended Oct. 24, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District judge. (CR-89-205-JH)
 Barry Steven Simon, Williams & Connolly, Washington, D.C., (Argued), for appellant Amos; John D. Cline, Williams & Connolly, Washington, D.C., on brief.
 Ephraim Savitt, New York City (Argued), for appellant Moran; David S. Zapp, New York City, on brief. Lisa M. Griffin, Assistant United States Attorney, Jan Paul Miller, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Richard C. Kay, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and DAVID C. NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 This is an appeal from the convictions at a joint trial of Sandra Amos and Guillermo Moran for the substantive offenses of distributing and possessing with intent to distribute cocaine, and for conspiring to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. On Amos's appeal, we reserve decision on the question whether the district court misconstrued the Insanity Defense Reform Act as absolutely precluding psychiatric evidence on the issue of mens rea, and hold that in any event the court properly excluded the evidence here proffered. Accordingly, we affirm Amos' convictions on both substantive counts. But we then conclude that the district court erred in failing to instruct the jury on a lesser included offense on the conspiracy charge against Amos, and remand for a new trial on that charge. On Moran's appeal, we vacate his conviction on all counts and remand for a new trial on the grounds that the district court abused its discretion in admitting impermissibly prejudicial evidence of prior bad acts.
 
 
 2
 * The facts of this case began in 1987 when Sandra Amos, an affluent cocaine addict, went on vacation to Florida. During that trip she met and became romantically involved with Dennis Case. On Amos's invitation, in early 1988 Case moved in with Amos in her Easton, Maryland home. Aware that Case was involved in drug trafficking, Amos introduced him to one of her suppliers, James Lawrence Woolford. Woolford then began distributing cocaine for Case. About every other week, Case travelled to New York where he purchased between four and eight ounces of cocaine from Guillermo Moran. He returned that cocaine to Maryland, first extracting about a quarter of the product for his and Amos's personal use, then selling the remainder to Woolford for local distribution. Case testified that, over the course of this conspiracy, Moran provided him with a total of about four kilograms of cocaine.
 
 
 3
 During the period that Case lived with Amos, she provided economic support for him in various forms. She set up an office for him, paid some of his living expenses, and helped him with travel costs for his trips to New York. In addition, she travelled to New York with Case on two or three occasions. While she may have been aware of Case's purchasing activities on these visits, she was never present for the actual transactions. Amos only met Moran once, when Case invited him to Amos's Easton home for Thanksgiving, 1988.
 
 
 4
 In late October or early November 1988, according to Case, Moran suggested that Case purchase a small airplane, eliminating the need for frequent trips between Maryland and New York and allowing Case to purchase large quantities of cocaine in Florida. Case was interested in the idea and subsequently hounded Amos to provide him money for the aircraft. At first she refused, after a lawyer told her that such economic support would legally implicate her in the drug dealings. Eventually, she agreed to provide Case with a $10,000 loan which she knew would be spent on the plane. On December 7, 1988, Amos delivered $20,000 to Case--a $10,000 loan from her plus $10,000 received from Moran--for the purpose of purchasing a plane. Case never bought a plane, but purchased an option (which he never exercised) to buy one.
 
 
 5
 In December 1988, Case was hospitalized. According to Case and Woolford, Amos became more involved with drug dealing during that period. She arranged for Woolford to pick up drugs from Moran, providing him with Moran's beeper number as well as cash. Upon Woolford's return, Amos picked up Case from the hospital, driving him to Woolford's house to pick up the drugs. On March 25, 1989, Case chartered a plane and flew to Florida to purchase 50 kilograms of cocaine. The deal was never consummated because airport employees in Florida informed Case--mid-flight--that his pilot was a Drug Enforcement Administration (DEA) agent. Six days later, Woolford and Case were arrested. Moran was arrested about four months later, in a separate DEA investigation, as the result of a tip from a confidential informant. Amos was arrested in Denver, on a separate drug charge. Case and Woolford agreed to cooperate with the government, testifying against Amos and Moran at trial.
 
 
 6
 Amos sought to introduce expert psychiatric testimony from Dr. Michael Spodak showing that, due to her cocaine addiction, she was unable to develop the requisite specific intent for the charged offenses. The court refused to admit this testimony, holding that the Insanity Defense Reform Act (IDRA) prohibited introduction of any psychiatric testimony except in support of an insanity defense. At trial, Amos's defense was that she lacked the requisite mens rea to commit these crimes. She admitted that she was a drug addict and admitted possession of cocaine, but denied any intent to distribute the drug.
 
 
 7
 Moran offered an alibi defense, arguing that he never committed the charged acts, and introduced evidence to prove he could not have been present to engage in the drug transactions at issue.
 
 
 8
 Amos requested that the jury be charged on lesser included offenses for both the possession with intent to distribute and the conspiracy counts. The court charged the jury on mere possession, as a lesser included offense of possession with intent to distribute. It declined to charge the jury on conspiracy to possess as a lesser included offense of conspiracy to possess with intent to distribute. The jury found both Moran and Amos guilty of one count of conspiracy to possess with intent to distribute cocaine and two counts of possession with intent to distribute cocaine.[1]
 
 
 9
 The court sentenced Amos to 168 months, declining to give her a sentence reduction on the basis of diminished mental capacity. Moran was sentenced to 18 1/2 years of prison. Sentences were based on a total drug involvement of 50 kilograms of cocaine.
 
 II
 
 10
 Amos's first assignment of error is to the court's decision to exclude the expert psychiatric testimony of Dr. Michael Spodak. Before trial, pursuant to Federal Rule of Criminal Procedure 12.2(b), Amos gave notice of her intention to introduce "expert testimony relating to a mental disease or defect or other mental condition bearing on the issue of guilt," specifically, a mental condition caused by her cocaine addiction which negated proof of mens rea. The government opposed admission of the proffered testimony on three grounds: first that the Rule 12.2(b) notice was not adequate; second, that the IDRA prohibits any evidence of diminished mental capacity short of the narrow insanity defense it defines;[2] and third, that the evidence was premised on a "novel scientific theory" of the effect of cocaine addiction that had not been adequately established under United States v. Gould, 741 F.2d 45 (4th Cir.1984).[3] Without addressing the other two grounds, the district court, relying on an unpublished opinion of this court, United States v. Hood, No. 87-5670 (Aug. 3, 1988), ruled the evidence inadmissible on the ground that the IDRA prohibits the use of such evidence for the purpose of negating specific intent.
 
 
 11
 Though we note that this ruling was against the probably unanimous view of all the other courts of appeals that have considered the issue authoritatively,[4] we need not address that broader issue here. Instead, we hold that even if psychiatric testimony aimed at negating specific intent in particular cases is not absolutely precluded in all circumstances by the IDRA, that proffered here was properly excluded as a matter of discretion.
 
 
 12
 Even those courts holding that the IDRA does not absolutely prohibit such evidence to negate specific intent in all circumstances, recognize that the circumstances for its proper admission will be quite rare. The reason is the intrinsic danger that any such evidence will confuse and mislead the jury into uses that are specifically prohibited by the IDRA. As the Eleventh Circuit recently has put it
 
 
 13
 Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of mens rea, and (3) "may easily slide into wider usage that opens up the jury to theories of defense more akin to justification", district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, "support a legally acceptable theory of lack of mens rea."
 
 
 14
 United States v. Cameron, 907 F.2d 1051, 1067 (11th Cir.1990), quoting Pohlot, 872 F.2d at 904-06.
 
 
 15
 Here, though Amos' formal proffer--made as a reply to the government's objection to admission of the evidence--is not the clearest, it seems to come to this: that Amos' cocaine addition had so far impaired her mental capacity to consider the drug for any purpose but personal use that she literally could not have formed the specific intent to distribute it or to conspire with others to distribute it. See J.A. at 88.
 
 
 16
 Laying aside a possibly more fundamental question whether such an effect on mental processes from drug addiction could be found sufficiently established to pass muster under the "novel scientific theory" of Gould, the evidence proffered here is a prime example of the kind whose unacceptable dangers were identified in Cameron. We are satisfied that for that reason it was properly excludable here. And although we realize that the district court did not expressly base its ruling on this ground, we think it is a ground sufficiently subsumed within the ground that was relied upon, that we may consider it implicit in the court's decision, hence reviewable as such without the need for remand.
 
 
 17
 We therefore find no error in the court's refusal to admit the proffered expert testimony that Amos' cocaine addiction prevented her from forming the specific intent to distribute or to conspire to distribute cocaine.
 
 III
 
 18
 Amos next argues that the district court erred by refusing to charge the jury on the crime of conspiracy to possess cocaine as a lesser included offense of conspiracy to possess with intent to distribute cocaine.
 
 
 19
 "[A] defendant is entitled to an instruction on a lesser-included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). A criminal offense includes a lesser offense where "the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck v. United States, 489 U.S. 705, 716 (1989).
 
 
 20
 The issue here is whether conspiracy to possess cocaine is a subset of conspiracy to possess with intent to distribute cocaine. The government suggests that one is not a subset of the other by describing the elements of conspiracy to possess with intent to distribute as follows: (1) an agreement to possess with intent to distribute cocaine; (2) knowledge of the unlawful agreement; (3) intention to join; and (4) participation in the agreement. See United States v. Hitow, 889 F.2d 1573, 1577 (6th Cir.1989). The government then argues that conspiracy to possess cocaine is not a lesser included offense because the first element--the agreement--is not identical to the first element in conspiracy to possess with intent to distribute. We disagree with that analysis.
 
 
 21
 The Seventh Circuit recently considered the related question of whether conspiracy to possess with intent to distribute cocaine was a lesser included offense of conspiracy to possess with intent to distribute in excess of 500 grams of cocaine in United States v. Teslim, 869 F.2d 316 (7th Cir.1989). The Teslim court noted that the lesser offense shared every element, but one, with the greater offense, stating "the elements of the lesser offense are a word for word subset of the greater offense." The court therefore concluded that the conspiracy to possess with intent to distribute was a lesser included offense.[5] Similarly here, the offense of conspiracy to possess cocaine is a word for word subset of conspiracy to possess with intent to distribute cocaine. We agree with the Seventh Circuit's reasoning.
 
 
 22
 The government's argument is essentially a semantic one seemingly based on the hypertechnical proposition that an agreement to do one certain thing (possess with intent to distribute) cannot in logic be one to do any other thing (whether greater or lesser); that therefore the "agreement" elements of the two conspiracies are not the same, so that the latter cannot be a sub-set of the former (can't be simply the "same-less-one" ). This ascribes too much content to the agreement element in conspiracy. The agreement element consists solely of the necessary meeting of minds to take concerted action; it does not extend to the criminal purpose of the particular conspiracy. It is specifically the purpose of a charged conspiracy that defines its special character--whether to murder, or to defraud, or to possess drugs, or whatever. Where the purpose elements of a charged conspiracy contain subsets, then so does the charged conspiracy itself. So it is with the charged conspiracy here: its charged purpose is to (1) possess (2) with intent to distribute. A conspiracy whose purpose is necessarily only to (1) possess is a lesser included subset of the charged conspiracy.
 
 
 23
 The next question is whether the proof adduced at trial was such that a jury rationally could have convicted Amos on the lesser included offense. The issue is not whether there was sufficient evidence to support her conviction, but rather "whether a reasonable jury could ... find the appellants guilty only of [the lesser offense]." United States v. Gibbs, 904 F.2d 52, 59 (D.C.Cir.1990). The answer is yes.
 
 
 24
 Amos' defense was built largely on the theory that she possessed cocaine only in service of her personal uses. She admitted that she and Case possessed cocaine but denied that she ever had distributed or had any intention of distributing narcotics. Case also testified that Amos wasn't concerned about the quantities of cocaine he had obtained for distribution. "All she was interested in was how much coke we had to do," he stated. Case further suggested that he shielded Amos from the distribution end of the process by leaving the room and going to the back of the house when preparing the cocaine for distribution. In addition, although Amos accompanied Case on several trips to New York, she was never included in the purchasing transactions. Indeed, the only time she ever met Moran was at a social affair, Thanksgiving dinner, when Case invited him to Easton.
 
 
 25
 The jury apparently felt this was something of a close question. During their deliberations, they sent out a note inquiring whether they could "charge on conspiracy and possession--leave out the distribution part." While we are reluctant to place too much reliance on the implications of a jury note, it does serve as some confirmation that the jury saw an evidentiary basis for conviction on the lesser included offense. On balance, we believe that while the jury did not act unreasonably in finding Amos guilty of the greater charge, a reasonable jury also could have chosen to convict Amos on the lesser included charge alone. Under these circumstances, the district court's failure to charge the jury on the lesser included offense of conspiracy to possess cocaine constitutes reversible error. We therefore reverse Amos' conspiracy conviction and remand for retrial on the conspiracy count.
 
 
 26
 Amos has also assigned as error two trial court rulings which she claims require reversal of her conviction on both conspiracy and conviction counts. One challenges the district court's refusal to take corrective action or conduct an evidentiary hearing upon the disclosure that the jury may have conducted an improper experiment. The other challenges the district court's permitting the prosecution, over objection, to ask Amos, on cross-examination, whether certain government witnesses were lying. Both of the challenged rulings are ones committed to trial court discretion. While both here raised serious questions for the district court, see United States v. Beach, 296 F.2d 153, 158 (4th Cir. 1961) (jury experiments involving evidence not admitted at trial may require new trial); United States v. Richter, 826 F.2d 206, 208 (2d Cir. 1987) ("witness-lying?" cross-examination generally not proper; reversible error in case at bar), we cannot find an abuse of discretion in either under the totality of the relevant circumstances here. In so concluding, we do not condone either of the rulings as proper exercises of discretion in any other circumstances of either that might occur on retrial of the conspiracy count.
 
 
 27
 For the same reason, we need not consider Amos' assignment of error respecting the district court's refusal to grant a downward departure. Aside from the question of the appealability of that particular action, we of course cannot know what will develop on retrial that may affect the sentencing process.
 
 IV
 
 28
 Moran challenges the district court's admission of evidence of both prior and subsequent bad acts, unrelated to the offenses charged to him. He argues that this evidence was inadmissible under Federal Rule of Evidence 404(b), which precludes admission of other bad acts "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b) explicitly allows introduction of such damaging evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Moran contends that, because his defense in this case was absolute denial of participation, evidence of his prior involvement with drugs and of the circumstances of his arrest after the period of the conspiracy charged to him had ended could not possibly have served any of the purposes enumerated in the rule. While we think that the admission of all of this evidence raises serious questions, we will concentrate only on that portion that we conclude was so far out of bounds under Rule 404(b) that reversal and remand for a new trial is required on its basis alone.
 
 
 29
 Over objection, Case, the central figure in this whole affair as described by government witnesses, was permitted to testify that Moran had supplied him with small quantities of cocaine on several occasions from 1986 to 1987, a period that pre-dated both the substantive and conspiracy offenses charged to Moran. He also described entering into an unrelated unsuccessful venture with Moran in which they fronted cocaine to a Boston distributor who could not find customers. Case further described his own involvement in another unrelated plan to import large quantities of cocaine, in which Moran was to serve as a distributor.
 
 
 30
 To determine whether evidence is admissible under Rule 404, the district court must balance the probative value of the evidence, defined by its relevance, necessity, and reliability, against the potential prejudice to the defendant. United States v. Hadaway, 681 F.2d 214, 217 (4th Cir.1982). Evidence of other bad acts, useful only to prove criminal character or predisposition is manifestly inadmissible. In addition, evidence of other bad acts is only relevant when it is "sufficiently related to the charged offense." United States v. Rawle, 845 F.2d 1244, 1247 n. 3 (4th Cir.1988).
 
 
 31
 The court admitted this evidence of Moran's prior bad acts as "background." We are unconvinced that this evidence is legitimate "background" evidence. While these interactions between Moran and Case may well have provided the jury with an explanation for how the two came to know each other, we cannot see how this could properly have been used to aid the jury determine whether or not Moran was guilty of conspiracy to distribute cocaine and distributing it on the specifically charged occasions. In some sense, all prior events in a defendant's life, or in a relationship between two people, can be considered background. Not all such events are admissible, however, under Rule 404(b). Whatever minimal assistance this "background" evidence might provide the jury, we are convinced is outweighed by the significant potential for prejudice arising from its most obvious "value" in suggesting that Moran had a propensity for drug-related criminal conduct and that every contact between Case and Moran must, necessarily, have been in the nature of an actual drug distribution effort or a conspiracy to distribute.
 
 
 32
 Nor do we see any other legitimate basis than "background" for admitting this evidence of prior bad acts under Rule 404(b). First, even if believed, the evidence of Moran's earlier plans to sell drugs did not have any unique characteristics that would tend to prove a common plan, or provide evidence of preparation or opportunity to engage in the charged offenses. According to Case, Moran had sold him small quantities of cocaine on one occasion and on other occasions had agreed to help distribute cocaine. The prior schemes did not, so far as the evidence of their occurrence showed, involve similar tactics, tools, or a crime sufficiently unusual that a jury could conclude that if the crime occurred, Moran's "signature" was upon it.
 
 
 33
 These prior bad acts are also inadmissible to prove absence of mistake, since Moran does not claim he was an innocent man in the wrong place, at the wrong time. Moran's defense was more fundamentally that he was never in the places where the charged offenses occurred. Similarly, this evidence was not probative of intent, since that was not in issue where Moran relied entirely on an alibi defense. See United States v. Ortiz, 857 F.2d 900, 904 (2d Cir.1988). Finally, this evidence sheds no light at all on Moran's motive, knowledge, or identity as they might relate to the charged offenses.
 
 
 34
 The prosecution's overreaching efforts to introduce every shred of damning evidence against Moran, related or unrelated to the present case, was improper. Its admission by the district court was error that we cannot conclude was harmless under the circumstances.[6]
 
 V
 
 35
 In conclusion, in No. 90-5024 we vacate Moran's convictions on all counts and remand for a new trial; in No. 90-5025, we affirm Amos' conviction on the substantive distribution counts, but vacate her conviction on the conspiracy count and remand for a new trial.
 
 
 36
 SO ORDERED.
 
 
 37
 MURNAGHAN, Circuit Judge, and DAVID C. NORTON, District Judge, joined.
 
 
 
 [1]
 Amos was never arraigned on the second possession charge and judgment was entered against her only on the conspiracy count and one possession count
 
 
 [2]
 The IDRA was enacted in 1984 following the Hinckley assassination attempt on President Reagan for the principal purpose of narrowing the scope of the traditional insanity defenses. It did this by defining the available defense as a narrow, affirmative one that "the defendant was unable to appreciate the nature and quality or the wrongfulness of his acts," and by then providing that, "[m]ental disease or defect does not otherwise constitute a defense." 18 U.S.C. Sec. 17(a). The principal effect of the narrowing was to eliminate the volitional prong of the preexisting test which made it a defense that though aware of its wrongfulness, a defendant was unable to conform his conduct to the law. See United States v. Pohlot, 827 F.2d 889, 896 (3d Cir.1987)
 
 
 [3]
 Gould, decided while the pre-IDRA insanity defense was in effect, held that when a mental disorder defense is premised on a "novel" scientific hypothesis of a causal connection between disorder and conduct, expert evidence in support of the defense must pass a "foundational relevance test" that asks whether the hypothesis has "substantial acceptance in the relevant discipline." 471 F.2d at 49. The government's reliance on Gould assumes that though its test was announced when the insanity defense had a volitional as well as cognitive prong, it still applies under the IDRA which has abolished the volitional prong. In view of our disposition on other grounds, we need not address that assumption
 
 
 [4]
 See United States v. Cameron, 907 F.2d 1051, 1066 (11th Cir.1990); United States v. Newman, 889 F.2d 88, 91 n. 1 (6th Cir.1989); United States v. Twine, 853 F.2d 676, 679 (9th Cir.1988); United States v. Pohlot, 827 F.2d 889, 903 (3rd Cir.1987); United States v. Gold, 661 F.Supp. 1127, 1130-31 (D.D.C.1987); compare United States v. White, 766 F.2d 22, 24-25 (1st Cir.1985) (suggesting that the IDRA precludes a diminished capacity defense), with United States v. Lopez-Pena, 912 F.2d 1536, 1541 (1st Cir.1989) (suggesting that on appropriate facts, White might require reconsideration)
 
 
 [5]
 Several courts have assumed that conspiracy to possess might be a lesser included offense of conspiracy to possess with intent to distribute, without actually deciding the matter. See e.g., United States v. O'Meara, 895 F.2d 1216, 1219-20 (8th Cir.1990); United States v. Roper, 874 F.2d 782, 789 (11th Cir.1989)
 
 
 [6]
 This case essentially boiled down to the credibility of Case and Woolford, as government witnesses, against Moran's non-participation alibi defense. There was no independent, neutral support for the plea-bargained testimony of these unindicted co-conspirators, who obviously had much at stake. Moran's alibi defense was not inherently implausible. The risk of prejudice from mere association with Case in other, unrelated dealings, was therefore unusually high