**Robert M. MONTGOMERY,**
**Plaintiff–Appellee,**

v.

**The AETNA CASUALTY & SURETY**
**COMPANY, Defendant–Appellant.**

**No. 89–3052.**

United States Court of Appeals,
Eleventh Circuit.

April 25, 1990.

James A. Young, Stephen C. Davis, Haas, Boehm, Brown, Rigdon, Seacrest & Fishcher, Tampa, Fla., for defendant-appellant.

Ronnie H. Walker, P.A., Orlando, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, and JOHNSON and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's order denying the motion of the defendant, Aetna Casualty and Surety Company ("Aetna"), for judgment notwithstanding the verdict.

## I. FACTS

### A. *Background*

This is an action for breach of a fiduciary responsibility insurance contract ("the policy"). Robert Montgomery ("plaintiff") was trustee of a profit sharing trust fund ("the plan") for employees of the law firm of Howell, Kirby, Montgomery, D'Auito & Dean. Aetna issued plaintiff the policy, which provided that Aetna would

> [p]ay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages [1] on account of any claim made against the Insured for any Wrongful Act [2] and [that Aetna would] have the right and duty to defend such claim against the Insured seeking such damages, even if the allega-

---

1. The policy provides that "damages" shall not include "[f]ines, penalties, taxes or punitive or exemplary damage."

2. The policy defines "wrongful act" as "[a]ny breach of fiduciary duty by the Insureds in the discharge of their duties on behalf of the Trust or Employee Benefit Plan designated in the Declarations, including any negligent act, error or omission of the Insured in the 'administration' of the Trust or Plan designated in the Declarations."

tions of the claim are groundless, false or fraudulent

. . . .

The profit sharing plan was originally created in 1969. During the 1970s, the firm began to grow, which led to conflicts of interest for the firm. The firm's satellite office in Jacksonville, Florida ("the Braddock group") left the firm effective June 1, 1976. Approximately one year later the firm went through dissolution.

These events caused problems with the vesting of benefits under the plan. First, for vesting purposes, the plan's fiscal year was from July 1 to June 30. The Braddock group's benefits under the plan for the year 1976 did not vest because the Braddock group left the firm before June 30, 1976. Second, the plan provided that plan participants employed at the firm at the time of dissolution would have 100% vested benefits, but that those not employed at the time of dissolution would receive a lesser percentage of vested benefits as provided in a vesting schedule. Because the trustees considered the Braddock group to have been terminated prior to the firm's dissolution, the trustees found that the Braddock group's benefits were less than 100% vested.

When the IRS reviewed the trustees' actions concerning the Braddock group, the IRS revoked the plan's tax exempt status for failure to comply with ERISA[3] and for failure to comply with the terms of the plan. The Braddock group also objected to the trustees' determination of the Braddock group's rights under the plan and filed suit against the trustees. The Braddock group's complaint alleged that the trustees violated the terms of the plan in determining the Braddock group's vesting schedule, which caused the IRS to revoke the plan's tax-exempt status. The complaint also alleged that the trustees violated their fiduciary duties under ERISA.

Plaintiff notified Aetna of the Braddock suit and demanded that Aetna provide a defense in the suit. Aetna retained the law firm of Wells, Gattis, Hallowes & Carpenter to represent the trustees in the Braddock suit, and Jacqueline Griffin of that firm assumed primary responsibility for the case. Plaintiff's co-trustee, John Cunningham, told Griffin that the IRS ruling revoking the plan's tax exempt status was crucial to the defense in the Braddock suit. In March 1979, plaintiff advised Griffin that he was hiring independent counsel to pursue the tax issue in the Braddock suit and that he would look to Aetna to cover the costs of litigating the tax issue. Aetna responded that it would supply a defense to the Braddock suit through Griffin under a reservation of rights. Aetna noted that plaintiff was welcome to hire his own counsel but that Aetna was not responsible for paying that counsel.

Plaintiff then hired David Meisel, a tax attorney, to represent the plaintiff. Meisel and his successor, Peter Mettler, initiated a separate action in the United States Tax Court on behalf of the plaintiff and against the IRS, challenging the IRS's determination that the plan no longer qualified for the tax exempt status. The tax litigation was successful, and the Tax Court requalified the plan for tax exempt status in July 1986. This resulted in a substantial tax savings for the plan. The Braddock suit settled shortly after requalification of the plan for tax exempt status. Under the settlement, the Braddock group agreed that some members of the Braddock group would not be entitled to benefits under the plan at all and that the others would not be entitled to benefits for 1976.

### B. *Proceedings Below*

Plaintiff filed the present suit in Florida state court. On March 20, 1987, Aetna removed the case to federal court. Count one of the complaint alleged that Aetna breached the insurance contract by providing Griffin as counsel because she was not an expert in tax matters and that plaintiff

---

3. The IRS letter stated that the trustees had violated 26 U.S.C.A. § 411(d)(3) of the Internal Revenue Code ("the Code") by failing to make benefits non-forfeitable for employees terminated in 1976 and 1977. Accordingly, the IRS found that the plan was not exempt from tax under section 501(a) of the Code.

consequently had to hire independent tax counsel. Count one asked for damages in the amount of the tax counsel's fees. Count two alleged that Aetna acquiesced in plaintiff's hiring of the tax counsel and that Aetna was therefore estopped from denying liability for the tax counsel's fees.

The district court held a jury trial on November 30 and December 1, 1988. At trial, plaintiff offered testimony about the actions surrounding the Braddock suit and the IRS's revocation and recertification of the plan's tax exempt status. Plaintiff testified that requalification of the plan for tax exempt status caused the resolution of the Braddock group suit. He also testified that the tax action was important because it preserved the corpus of the plan by avoiding back taxes, interest and penalties. Plaintiff's tax counsel, however, testified that the settlement of the Braddock group suit involved concessions by the trustees. Griffin also testified that resolution of the tax matter was not dispositive of the Braddock suit.

Plaintiff offered expert testimony from Laverne Donaldson about the interpretation of the policy and the scope of Aetna's duty to defend under the policy. Donaldson testified that Aetna had a duty under the policy to provide counsel for the tax matter.[4] Aetna objected to this testimony.

The district court submitted the issue of the scope of Aetna's duty under the policy to the jury.[5] The jury returned a verdict in favor of the plaintiff for $122,059 plus interest. On December 12, 1988, Aetna moved for judgment notwithstanding the verdict or for a new trial.[6] The district court denied this motion on December 22, 1988.

In this appeal we first consider whether the district court erred in denying Aetna's motion for judgment notwithstanding the verdict because the tax matter is outside the scope of Aetna's duty to defend under the policy. We then consider whether the district court erred in admitting the plaintiff's expert testimony on the scope of Aetna's duty to defend under the policy.

## II. ANALYSIS

### A. Scope of Aetna's Duty Under the Policy

Under Florida law, the construction of an insurance policy is a question of law for the court. *Jones v. Utica Mut. Ins. Co.*, 463 So.2d 1153, 1157 (Fla.1985); *Ellenwood v. Southern United Life Ins. Co.*, 373 So.2d 392, 394 (Fla.App.1979) (if the facts are undisputed and there is an ambiguity in the policy, the case should be decided by the judge). It is for the jury, however, to determine whether the facts of the case fall within the scope of the coverage as defined by the court. *Jones*, 463 So.2d at 1157. Aetna argues that the material facts of this case were undisputed and that the district court therefore erred in refusing Aetna's motion for a directed verdict. We agree. It is undisputed that Aetna refused to pay for counsel in the tax matter. Thus, the central question in the trial was whether the scope of Aetna's duty to defend was broad enough to encompass the suit against the IRS. This was a question of contractual interpretation, which the judge should have decided.

Under Florida law, an insurer's duty to defend is determined by asking whether the allegations in the complaint fall within

---

**4.** Donaldson testified as follows:
Q. We talked about the insurance company having a duty to defend here based upon the allegations in the complaint.
A. Yes.
Q. Does that duty extend in this case to [plaintiff's] request that the insurance company retain, and specifically Aetna in this case, retain expert lawyers with expertise in tax areas so as to prosecute this matter with a dec[laratory] action? If it was necessary in order to completely defend him in this case?
A. Yes. In my opinion it did.

**5.** The court instructed the jury, "[i]n determining whether Aetna adequately and reasonably defended the lawsuit, you must consider whether reasonable defense of the Braddock lawsuit necessarily required litigation of the tax consequences of the trust plan against the Internal Revenue Service."

**6.** Aetna preserved its right to move for a judgment notwithstanding the verdict by moving for a directed verdict at the close of all evidence. *See* Fed.R.Civ.P. 50(b).

the coverage provided by the policy. *Trizec Properties, Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 811 (11th Cir.1985); *Reliance Ins. Co. v. Royal Motorcar Corp.*, 534 So.2d 922, 923 (Fla.App.1988); *Logozzo v. Kent Ins. Co.*, 464 So.2d 605, 606–07 (Fla.App.1985). If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit. *Trizec*, 767 F.2d at 811–12. All doubts as to whether a duty to defend exists are resolved in favor of the insured. *Id.* at 812.

 Aetna argues that under the contract it had no duty to bring suit against the IRS. The language of the contract defines Aetna's duty to defend as follows:

> [Aetna] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages on account of any claim made against the Insured for any Wrongful Act, and [Aetna] shall have the right and duty to defend such claim against the Insured seeking such damages....

This language refers only to claims brought against the insured and does not refer to claims brought by the insured. The policy does not provide that Aetna will bring actions on behalf of the plan or the trustees; it merely provides that Aetna will defend actions brought by third parties against the plan and the trustees.[7] The "damages," moreover, that Aetna must cover under the policy do not include taxes, fines, or penalties. Aetna, therefore, had no duty to prosecute an action in the tax court defending the plan's tax exempt status and is not liable under the policy for the fees of plaintiff's tax attorneys.

**B. *Expert Testimony***

 Determinations of the admissibility of evidence are left to the broad discretion of the district court, and this Court will not disturb a district court's evidentiary rulings absent a clear showing of abuse of discretion. *United States v. Roper*, 874 F.2d 782, 790 (11th Cir.1989). An expert may testify as to his opinion on an ultimate issue of fact. Fed.R.Evid. 704. An expert may not, however, merely tell the jury what result to reach. *Id.* at committee notes (merely telling jury what result to reach is not helpful to the jury and therefore is not admissible testimony). A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law. *United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir. 1987); *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir.1980). Donaldson testified that in his opinion Aetna had a duty to hire tax counsel in this case. *See supra*, note 4. This was a legal conclusion, and therefore should not have been admitted.[8] The district court abused its discretion by allowing Donaldson to testify about the scope of Aetna's duty under the policy.[9]

### III. CONCLUSION

We REVERSE the judgment in favor of plaintiff and REMAND to the district court for entry of judgment notwithstanding the verdict in favor of Aetna.

---

**7.** In *Sokolowski v. Aetna Life & Cas. Co.*, 670 F.Supp. 1199 (S.D.N.Y.1987), the court held that Aetna had a duty to defend cases brought by plan participants against the plan for breach of fiduciary duties. The case involved the same form Fiduciary Responsibility Insurance Policy involved in the present case, but *Sokolowski* did not involve a claim for the expenses connected to a case brought by the insured.

**8.** Donaldson's testimony also was improper because it was relevant only to the issue of the scope of Aetna's duty under the policy. This issue should not have been presented to the jury. *See* Part II.A., *supra.*

**9.** Some lower Florida courts have stated that courts may admit expert testimony on the meaning of an insurance contract. *Red Carpet Corp. of Panama City Beach v. Calvert Fire Ins. Co.*, 393 So.2d 1160, 1161 (Fla.App.1981); *Aetna Ins. Co. v. Loxahatchee Marina, Inc.*, 236 So.2d 12, 14 (Fla.App.1970). These cases, however, appear inconsistent with the Florida Supreme Court cases holding that interpretation of an insurance contract is a question of law to be decided by the judge. *See Jones*, 463 So.2d at 1157; *Smith v. State Farm Mut. Automobile Ins. Co.*, 231 So.2d 193, 194 (Fla.1970); *see also Ellenwood*, 373 So.2d at 394.