**Gladys M. CORDOVES, Plaintiff,**

v.

**MIAMI–DADE COUNTY,
et al., Defendants.**

**Case No. 14–20114–CIV.**

United States District Court,
S.D. Florida.

Signed March 2, 2015.

---

Gregory Antonio Samms, Gregory A. Samms, Coral Gables, FL, for Plaintiff.

Erica Sunny Shultz Zaron, Daniel Frastai, Miami, FL, Aaron Benjamin Greenberg, John Archibald Campbell, III, Patrick K. Dahl, Wicker, Smith, O'Hara, McCoy & Ford, P.A., Wicker Smith

O'Hara McCoy & Ford, PA, Fort Lauderdale, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendants, Mydatt Services, Inc. d/b/a Valor Security Services ("Valor"), and SDG Dadeland Associates, Inc. d/b/a Dadeland Mall's ("Dadeland Mall['s]") (collectively, "Defendants[']") Amended Motion ... to Exclude Testimony of Louis Androuin ("Motion") [ECF No. 89], filed December 9, 2014. In the Motion, Defendants seek to exclude the testimony of Louis Androuin ("Androuin"), a purported expert proffered by Plaintiff, Gladys Cordoves ("Cordoves"). The Court has carefully reviewed the Motion; Cordoves's Response ... ("Response") [ECF No. 102], filed January 7, 2015; Defendants' Reply ... ("Reply") [ECF No. 108], filed January 14, 2015; the record; and applicable law.

## I. BACKGROUND

This case arises out of an incident at the Dadeland Mall on November 14, 2010, during which Cordoves had a confrontation with security personnel that ended with her arrest. (*See* Resp. 2–3). The incident was precipitated by the presence of Shiloh, a small dog Cordoves had been toting in a stroller while shopping in the mall with her mother and daughter. (*See id.* 2). According to Cordoves, a security guard asked her to leave because dogs are not allowed in the mall. (*See id.*). Cordoves told the guard Shiloh was a service animal, but the situation grew increasingly confrontational, and ultimately Cordoves was arrested and escorted off the premises. (*See id.* 2–3).

Cordoves claims, among other things, she was discriminated against in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12181 *et seq.*, which she argues required Dadeland Mall to accommodate her disability by permitting the presence of Shiloh, which she asserts is a service dog. (*See* Third Amended Complaint [ECF No. 52] ¶¶ 59–79). Cordoves also claims Defendants are liable for negligence in connection with the actions of Alex Caminero ("Caminero"), one of the security guards involved in the incident. (*See id.* ¶¶ 80–88, 94–101). Defendants interpret these claims to be premised on the theory Defendants failed to adequately train Caminero with respect to the ADA regulations governing interaction with service animals. (*See* Mot. 3 & n. 4).

Title III of the ADA prohibits discrimination against individuals with disabilities in places of public accommodation, such as malls. *See* 42 U.S.C. §§ 12181(7)(E), 12182(a). To implement this generic prohibition, Congress delegated authority to the Attorney General to promulgate regulations setting more specific standards of compliance with the ADA. *See id.* § 12186(b). Given the important role played by service animals to individuals who need them, the regulations require places of public accommodation allow "[i]ndividuals with disabilities ... to be accompanied by their service animals in all areas ... where members of the public, program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go." 28 C.F.R. § 36.302(c)(7) (alterations added). A "service animal" is defined as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability." 28 C.F.R. § 36.104. The work or tasks performed by the dog "must be directly related to the individual's disability," but "the provision of emotional support, well-being, comfort,

or companionship do[es] not constitute work or tasks. for the purposes of this definition." *Id.* (alteration added).

 While the regulations implementing the ADA provide a narrow definition of "service animal," places of public accommodation are nevertheless not permitted to conduct such a scrutinizing inquiry. The regulations instead provide places of public accommodation a limited inquiry to ascertain whether an individual has the right to be accompanied by an animal claimed to be a service animal:

> A public accommodation shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A public accommodation may ask [ (1) ] if the animal is required because of a disability and [ (2) ] what work or task the animal has been trained to perform. A public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal. Generally, a public accommodation may not make these inquiries about a service animal when it is readily apparent that an animal is trained to do work or perform tasks for an individual with a disability (e.g., the dog is observed guiding an individual who is blind or has low vision, pulling a person's wheelchair, or providing assistance with stability or balance to an individual with an observable mobility disability).

28 C.F.R. § 36.302(c)(6) (alterations added). A public accommodation engaging in this limited inquiry does not ascertain, as a matter of law, whether a dog in question is a service animal. *See Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173, 1185 n. 11 (11th Cir.2007) (explaining "the ADA prohibits public accommodations from requiring proof that an animal is a service animal"). The regulation thus protects individuals with disabilities from possibly unwanted questioning.

It is an entirely different matter, however, when a Court is faced with an ADA claim hinging on whether a dog is a service animal. In such a case, the Court must determine whether the dog is a "service animal" under the definition provided by 28 C.F.R. section 36.104, because if the dog is not a service animal, then the discrimination claim fails. *See, e.g., Davis v. Ma,* 848 F.Supp.2d 1105, 1114–16 (C.D.Cal. 2012); *Miller v. Ladd,* No. CV–08–05595–NJV, 2010 WL 2867808, at *4–5 (N.D.Cal. July 20, 2010); *Vaughn v. Rent–A–Center, Inc.,* No. 2:06–CV–1027, 2009 WL 723166, at *10–11 (S.D.Ohio Mar. 16, 2009). To this end (and also with respect to her negligence claims), Cordoves submits the Declaration of Louis F. Androuin, her ADA Expert Consultant ("Declaration") [ECF No. 89–2], regarding: (1) Shiloh's status as a service animal, (2) the ADA regulatory scheme governing interaction with individuals accompanied by service animals, and (3) the adequacy of the training of the personnel involved in the incident with respect to service-animal compliance. (*See generally* Decl.). Androuin was deposed once on November 6, 2014 ("November 6 Deposition") [ECF No. 89–3], and again on November 13, 2014 ("November 13 Deposition") [ECF No. 89–5]. In their Motion, Defendants argue under Federal Rule of Evidence 702 ("Rule 702"), Androuin's testimony is inadmissible in its entirety. (*See generally* Mot.).

## II. LEGAL STANDARD

 Rule 702, which governs expert testimony, states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702. Rule 702 requires district courts to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This " 'gatekeeping' " function must be performed with regard to the admissibility of both expert scientific evidence and expert technical evidence. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir.2004) (quoting *Daubert,* 509 U.S. at 589 n. 7, 597, 113 S.Ct. 2786; citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Frazier,* 387 F.3d at 1260 (emphasis, alterations, citation, and internal quotation marks omitted).

■■■ The Eleventh Circuit requires district courts to conduct a three-part inquiry to determine the admissibility of expert testimony:

(1) the expert [must be] qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions [must be] sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony [must] assist[ ] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.,* 609 F.3d 1183, 1194 (11th Cir.2010) (alterations added; citation omitted).[1] The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, the testimony satisfies each prong. *See id.* (citation omitted).

### III. ANALYSIS

Defendants contend Androuin's testimony fails to satisfy all three prongs of the Rule 702 inquiry. They argue Androuin is not qualified to offer any of his opinions; he has not established any discernible methodology or basis for his opinions; and his opinions consist of impermissible legal conclusions. (*See* Mot. 1). Cordoves responds Androuin is qualified based on his professional experience; his testimony is grounded in the ADA regulatory scheme and his professional experience; and his testimony would be helpful to the trier of fact. (*See* Resp. 1–2). The Court addresses the parties' arguments in turn.

### A. Qualifications

■■■ Expert testimony is admissible only if the testimony is given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education." FED.R.EVID. 702 (alteration added). The plain language of Rule 702 makes clear, "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer

1. Part two of the Eleventh Circuit's admissibility inquiry—the reliability analysis—can be read to encompass sub-sections (b), (c), and (d) of Rule 702. The Court will therefore address those sub-sections as part of its reliability analysis.

another path to expert status." *Frazier,* 387 F.3d at 1260–61. Assuming an expert is qualified to testify, the expert may testify only about matters within the scope of his or her expertise. *See City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998) (explaining "the expert [must be] qualified to testify competently regarding the matters he intends to address" (alteration added; citations omitted)); *Feliciano v. City of Miami Beach,* 844 F.Supp.2d 1258, 1262 (S.D.Fla.2012) ("Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." (internal quotation marks and citations omitted)). In other words, expert testimony regarding matters outside of the witness's expertise is inadmissible, even if the expert is qualified to testify about other matters. "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Pleasant Valley Biofuels, LLC v. Sanchez–Medina,* No. 13–23046–CIV, 2014 WL 2855062, at *2 (S.D.Fla. June 23, 2014) (internal quotation marks and citation omitted).

Androuin intends to testify regarding (1) Shiloh's status as a service animal, (2) the ADA regulatory scheme governing interaction with individuals accompanied by service animals, and (3) the adequacy of the training of the personnel involved in the incident with respect to service-animal compliance. The Court addresses Androuin's qualifications with respect to each of these topics.

### 1. Shiloh's Status as a Service Animal

▮ Androuin is not qualified to testify about Shiloh's status as a service animal. *See Pleasant Valley Biofuels, LLC,* 2014 WL 2855062, at *3 (excluding expert testimony because the expert's "experience is insufficiently related to the subject of his opinions"). At his deposition, Androuin admitted he is not an animal trainer and has never been involved with training a service animal. (*See* Nov. 6 Dep. 26:15–21). He admitted he "obviously" does not know what specifically is needed to train a service animal. (*Id.* 26:22–25). While not legally determinative, it bears mentioning this case is the first time Androuin has been asked to opine on whether a particular animal is a service animal. (*See id.* 30:4–18).

Contrary to Cordoves's suggestion (*see* Resp. 8–9), Androuin's expertise in ADA compliance, *see infra* Part III.A.2, does not make Androuin qualified to testify a particular animal is a service animal—the two subjects are distinct. Perhaps some experts may be qualified to testify about both, but Androuin's candid admissions reveal he is not amongst them. It is also of no matter that Androuin associates with and has discussions with individuals and organizations that train service animals such as Janet Severt and New Horizons Service Dogs, Inc. (*see* Decl. ¶ 6), since Androuin himself does not have the necessary personal experience in service-animal training.

### 2. Service–Animal Compliance

▮ Androuin is qualified to testify about the adequacy of the training of the personnel involved in the incident with respect to ADA service-animal compliance. Although neither the Court nor the parties have identified a case where a court admitted expert testimony regarding compliance with the ADA's service-animal regulations, courts have found experts qualified to testify about compliance with other ADA regulations. *See Burkhart v. Wash. Metro. Area Transit Auth.,* 112 F.3d 1207, 1211–12 (D.C.Cir.1997) (finding expert qualified to testify on "issues of police procedures,

practices, and training, as they concern the [ADA]," where expert had a career's worth of experience as an instructor in police training and procedures and where he reviewed the applicable regulations (internal quotation marks omitted; alteration in original)); *Access 4 All, Inc. v. Bamco VI, Inc.*, No. 11–61007–CIV, 2012 WL 1470407, at *2 (S.D.Fla. Jan. 6, 2012) (finding "state certified general contractor with 15 years experience in construction and at least 6 years experience in ADA compliance" qualified as an expert); *Hoewischer v. Sailormen, Inc.*, No. 3:10–CV–752–J–37MCR, 2012 WL 2865788, at *2 (M.D.Fla. July 11, 2012) (finding "certified general contractor and building inspector, [who] has taught and attended classes about ADA compliance, and has testified as an ADA expert in nine trials" qualified as an expert (alteration added)).

Androuin started studying the ADA around the year 1997 (*see* Nov. 6 Dep. 21:20–22:6), and he began attending courses and seminars to further his education around the year 2000 (*see id.* 22:13–15). Although there are no formal certifications for ADA expertise, Androuin continues to attend seminars, webinars, and the like, and once he even presented as a speaker. (*See id.* 25:10–18, 26:4–11). In addition to his studies, for the last 13 years, Androuin has been a consultant advising residential, commercial, and public facilities in accessibility compliance with Titles II and III of the ADA and related regulatory schemes. (*See* Decl. ¶ 2). He first gained work experience as a paralegal specializing in ADA cases—a position he held from 2001–2002 until 2007. (*See* Nov. 6 Dep. 19:2–11).

Androuin estimates he has worked on over 150 matters. (*See* Decl. ¶ 3). Although none of the 150 cases directly involved compliance with service-animal regulations, some of the cases' settlements required training on service-animal compliance. (*See* Resp. 8 n. 5; Nov. 13 Dep. 186:15–24). Additionally, Androuin has conducted investigations and remediation arising out of incidents in which individuals with service animals were met with resistance in places they were allegedly authorized to have their service animals. (*See* Decl. ¶ 4). This line of work involves "review[ing] ... policies and procedures related to service dog interactions" (*id.* ¶ 3 (alterations added)), and "confronting personnel at public accommodations who have refused to permit a service dog on the premises" (*id.* ¶ 4).

At his deposition, Androuin described an incident in which he helped a woman who was being threatened with eviction from her condominium for having what she claimed to be a service animal. (*See* Nov. 6 Dep. 36:7–18). Androuin has also been retained by condominium boards involved in disputes relating to service animals. (*See id.* 36:23–24). Finally, Androuin has aided the Miami Shores Police Department, Sunny Isles Beach Police Department, and Publix's Southeast Florida District in training their employees to comply with service-animal regulations. (*See* Decl. ¶ 4). Although Androuin's experience with service-animal compliance does not appear to be as firm as his experience with other aspects of the ADA, Androuin has sufficient experience to qualify as an expert on service-animal compliance. *See, e.g., Access 4 All, Inc.*, 2012 WL 1470407, at *2.

It is not significant, as Defendants argue (*see* Reply 5), that Androuin has no ADA certifications, as no such certifications exist (*see* Nov. 6 Dep. 25:10–13). *See United States v. Paul*, 175 F.3d 906, 911 (11th Cir.1999) (finding expert qualified even though "no licensing board existed for questioned documents examiners, and the profession is not subject to standards that

quantify or measure the work of individual examiners"). It is likewise not significant, as Defendants argue (*see* Mot. 9), that Androuin has never before testified about service-animal regulations. *See Clena Invs., Inc. v. XL Specialty Ins. Co.,* 280 F.R.D. 653, 662 (S.D.Fla.2012) ("Every expert found to be qualified by a court must be so designated a first time."). Finally, Defendants' attempt to undermine Androuin's qualifications by pointing to a past conviction and other personal details (*see* Mot. 4–5) is unavailing, as "a district court cannot exclude an expert because it believes the expert lacks personal credibility because of prior bad acts.... Vigorous cross-examination ensures that these issues of general credibility are properly presented for consideration by the trier of fact." *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1293 n. 7 (11th Cir.2005). The Court thus finds Androuin qualified to testify about the adequacy of the training with respect to service-animal compliance.

## B. Reliability

Under Rule 702, expert testimony is admissible only if "the testimony is based on sufficient facts or data; ... the testimony is the product of reliable principles and methods; and ... the expert has reliably applied the principles and methods to the facts of the case." Fed. R.Evid. 702(b)–(d) (alterations added). Accordingly, a witness "relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.)) (altera-

tion added; internal quotation marks, emphasis, and citation omitted).

In *Kumho Tire,* the Supreme Court emphasized "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). While the inquiry is "a flexible one," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 594–95, 113 S.Ct. 2786 (footnote call number omitted). "But conclusions and methodology are not entirely distinct from one another.... [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (alterations added). "Rather, the trial court is free to 'conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Hendrix ex rel. G.P.,* 609 F.3d at 1194 (quoting *Joiner,* 522 U.S. at 146, 118 S.Ct. 512).

### 1. Sufficient Facts or Data

Expert testimony must be "based on sufficient facts or data." Fed.R.Evid. 702(b). Even assuming Androuin is qualified to testify Shiloh is a service animal, this testimony is not based on sufficient facts or data. Although Androuin considered certain relevant parts of the record, there are critical cracks in Androuin's factual foundation due to his failure to consider other relevant record evidence. Androuin had one in-person meeting with Cordoves and her daughter, during which he observed Shiloh for about an hour and a half. (*See* Nov. 6 Dep. 55:12–56:1, 68:9–

12). Androuin also had two phone conversations with Cordoves, lasting about five to ten minutes each. (*See id.* 55:12–56:5). Despite Androuin's opportunity to observe Shiloh, Androuin confirmed his knowledge of Shiloh's pre-alert task (which allegedly makes Shiloh a service animal)[2] is based solely on Androuin's conversations with Cordoves and her daughter and not on anything he observed or any records or documents he reviewed. (*See* Nov. 13 Dep. 141:25–142:9). Androuin did review a letter from Lawrence Silvey ("Silvey") of Breed Master Dog Training stating, as of December 31, 2010, Shiloh "is in training for obedience and service and therapy dog [sic]." (Nov. 6 Dep. 75:2–76:12 (alteration added); *see also* Decl. ¶ 6).

The rest of the evidence Androuin relied on for his conclusion Shiloh is a service animal relates not to Shiloh's pre-alert task but rather to Shiloh's obedient nature. Androuin reviewed a certificate from Breed Master Dog Training indicating Shiloh received basic obedience training (*i.e.,* sit, down, stay, heel, come)—not service-animal training. (*See* Decl. ¶ 6; Nov. 6 Dep. 73:10–74:13). Androuin also spoke by phone for about ten to 15 minutes with Silvey, who performed this obedience training. (*See* Nov. 13 Dep. 99:1–24, 100:15–23). Androuin gleaned from this conversation Silvey had been giving Shiloh obedience training—not service-animal training—before the incident. (*See id.* 102:17–103:3).

Androuin reviewed other letters "independently attesting to the docile nature and apparent work ethic of ... Shiloh." (*See* Decl. ¶ 6). One of these letters was submitted by Cordoves's physician who allegedly prescribed a service dog for Cordoves, and another letter was submitted by Cordoves's treating physician. (*See id.*). A third letter was submitted by the store manager of the Publix grocery store where Cordoves typically shops (*see id.*), although his observations of Shiloh began eight months after the incident (*see* Nov. 6 Dep. 59:25–60:9). Androuin also viewed an online public-service video featuring Shiloh and musician Tito Puente, Jr. and read a behavior assessment for Shiloh written by Dee Hoult of Applause Your Paws, Inc. (*See* Decl. ¶ 6). Record evidence relating to Shiloh's generally docile and obedient nature does little to assure the Court Androuin relied on sufficient facts or data to conclude Shiloh is trained as a service dog specifically to perform a pre-alert task.

There are also critical pieces of evidence bearing on Shiloh's status as a service animal Androuin did not even review: Cordoves and her daughter's depositions (*see* Nov. 6 Dep. 57:16–58:1); Cordoves and her daughter's sworn statements given to law enforcement personnel, (*see id.* 58:18–21); Cordoves's prescribing physician's deposition (*see id.* 58:2–5); and Cordoves's medical records (*see id.* 58:6–9). Despite three meetings with Cordoves, Androuin found out little to nothing about Shiloh's birth and early development, including where and when Shiloh was born and where and when Shiloh was purchased. (*See id.* 67:1–11, 69:20–22). Androuin did not conduct any study or test to independently gather facts or data regarding Shiloh's ability to pre-alert. Androuin never personally observed Shiloh performing any of the pre-alert tasks Androuin, in sworn testimony, claims Shiloh is capable of doing. In sum, Androuin's failure to make adequate use of

---

**2.** According to Androuin, Shiloh is a service animal because he "pre-alerts" to help Cordoves cope with post-traumatic stress disorder ("PTSD") attacks. (*See* Nov. 6 Dep. 69:7–12, 72:2–7). Androuin described Shiloh's pre-alert task as follows: "It's a little yelp. He does a little paw, a little lick, a little circular movement." (Nov. 13 Dep. 140:20–21).

the record significantly undermines the reliability of his testimony.

In addition to basing testimony on record evidence, an expert can base his testimony on his experience, in which case the expert must explain "why that experience is a sufficient basis for the opinion." *Frazier*, 387 F.3d at 1261 (citing FED.R.EVID. 702 advisory committee's note (2000 amends.)). Androuin stated he has witnessed, as a bystander, only one real-life incident of a dog's pre-alerting to assist an individual who was on the verge of having an episode. (*See* Nov. 13 Dep. 175:20–177:6). Androuin has not otherwise seen pre-alerting, not even in a video, demonstration, or seminar. (*See id.* 177:7–12). His experience thus adds little to the foundation of his testimony. Notably, Androuin admitted he has insufficient information to determine Shiloh was a service animal at the time of the incident. (Nov. 6 Dep. 48:6–49:2, 50:18–23). The Court agrees and also finds Androuin did not rely on sufficient facts or data to determine Shiloh is a service animal now. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir.1988) ("[T]estimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation." (alteration added)).

█ For the same basic reasons, the Court finds Androuin did not rely on sufficient facts or data for his opinion regarding the mall personnel's service-animal compliance. Androuin reviewed the testimony of Defendant Officer Jean Pompee ("Pompee"), an off-duty police officer involved in the incident. (*See* Decl. 11–12). Androuin also reviewed Caminero's deposition testimony. (*See* Nov. 13 Dep. 128:11–14). However, when Androuin was asked if he reviewed Pompee's personnel file and training records, Androuin's response was,

"of course not." (*Id.* 151:1–3). Not surprisingly, Androuin also did not consider Caminero's personnel file (*see id.* 151:14–17), or any of the training provided to personnel at either Dadeland Mall or Valor (*see id.* 151:18–21).

The Declaration briefly describes his past experience consulting on service-animal compliance, but these short references and summaries, although helpful in proving Androuin's qualification to testify, have insufficient detail to assure the Court Androuin's experience alone compensates for the otherwise poor factual foundation of his testimony. The Court thus finds Androuin's testimony the personnel involved in the incident were not properly trained regarding service-animal compliance is not based on sufficient facts or data. *See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003) ("[O]ur case[ ]law plainly establishes that one may be considered an expert but still offer unreliable testimony." (alterations added; citations omitted)).

## 2. Reliable Principles and Methods

█ In *Daubert*, the Supreme Court set forth a non-exhaustive list of factors to consider in determining if a specific methodology is reliable under Rule 702: whether the methodology can and has been tested; whether the methodology has been subjected to peer review and publication; the known or potential rate of error and the existence and maintenance of standards controlling operation of the methodology; and whether the methodology has gained general acceptance in the scientific community. 509 U.S. at 593–94, 113 S.Ct. 2786 (declining to set forth a "definitive checklist or test"); *accord Kumho Tire*, 526 U.S. at 141, 119 S.Ct. 1167. These factors can be adapted to the particular expert testimony at issue. For example, "it will at times be useful to ask even of a witness whose expertise is based purely on

experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable." *Kumho Tire,* 526 U.S. at 151, 119 S.Ct. 1167. Regardless of which factors are applied, "[t]he key consideration is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Rider v. Sandoz Pharm. Corp.,* 295 F.3d 1194, 1197 (11th Cir.2002) (quoting *Kumho Tire,* 526 U.S. at 156, 119 S.Ct. 1167) (alteration added).

■ Cordoves has not carried her burden of showing Androuin's testimony is based on reliable principles and methods. Androuin concludes Shiloh does his pre-alert tasks "as a natural condition" and as something "picked up on ... very early on." (Nov. 6 Dep. 71:4–8). Androuin also proffers a "self-training" theory, according to which every interaction between a dog and its owner is a form of training; from this, Androuin concludes self-training contributed to Shiloh's pre-alert training. (*See* Nov. 13 Dep. 112:20–115:4). But aside from a fleeting reference at his deposition to Assistance Dog's International, Inc.'s recognition of the "self-training" theory (*see id.* 112:21–23), Androuin does not explain any technical methodology used to arrive at these conclusions, nor does he cite any sources corroborating his assumptions. Androuin's testimony Shiloh is a service animal is thus not based on reliable principles and methods.

Indeed, Androuin admitted his knowledge of Shiloh's pre-alert task is based solely on his conversations with Cordoves and her daughter and not on anything he observed or any records or documents he reviewed. (*See* Nov. 13 Dep. 141:25–142:9). This is no more than *ipse dixit* and parroting of lay witness testimony—certainly not a reliable methodology. *See*

*Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (alteration added)). Androuin's "theory, therefore, cannot be tested and, in any event, the Court has no basis for finding that [his] technique—whatever it may be—is generally accepted in the relevant scientific community." *Whelan v. Royal Caribbean Cruises Ltd.,* No. 1:12–CV–22481–UU, 2013 WL 5595938, at *5 (S.D.Fla. Aug. 12, 2013) (finding expert has offered "no methodology" despite a general reference to a broad set of guidelines (alteration added)).

Cordoves argues Androuin's testimony Shiloh is a service animal is reliable "because it is based on the DOJ's definition of a service animal." (Resp. 14). That Cordoves and her expert are making arguments under the correct statutes and regulations is not so much an indicator of reliability as it is an indication Cordoves and Androuin are not completely missing the mark. Cordoves also argues this testimony is reliable "because it is based on ... [Androuin's] past experiences working to train personnel on identifying service dogs." (*Id.*). But just as Androuin's experience in service-animal compliance does not qualify Androuin to testify Shiloh is a service animal, *see supra* Part III.A.1, Androuin's experience in service-animal compliance does not make Androuin's testimony Shiloh is a service animal any more reliable. The two issues are distinct.

■ Androuin also concludes "it cannot reasonably be disputed that the responding security personnel were not properly trained as to the ADA requirements regarding service dogs." (Decl. 11). The only discernible methodology used to arrive at this conclusion is a vague statement

at Androuin's deposition: "How do they handle service animals, how do they handle requests for a reasonable accommodation regarding a service animal.... What do they do with their employees, how do they train their employees." (Nov. 13 Dep. 186:2–8). Peeking behind the veil, one finds Androuin's purported methodology consists of nothing more than reviewing Pompee's testimony (see Decl. 11–12) and Caminero's testimony (see Nov. 13 Dep. 128:11–14). Androuin did not review any documentation concerning training that might have been provided to mall personnel, and in fact, never even requested such documentation. (See id. 128:6–17).

Androuin's failure to seek these materials—and, if they exist, review them—contradicts not only his purported methodology, but also his own past practice, as he claims to have "review[ed] ... policies and procedures related to service dog interactions" in his other work matters. (Decl. ¶ 3 (alterations added)). It is thus clear Androuin has not "employ[ed] in th[is case] the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 156, 119 S.Ct. 1167 (alterations added). Androuin's threadbare methodology for his service-animal compliance testimony is not sufficiently reliable.

### 3. Reliable Application of Principles and Methods to the Facts of the Case

■ The party proffering expert testimony must prove "the expert has reliably applied the principles and methods to the facts of the case." FED.R.EVID. 702(d). As explained in Part III.B.2, supra, Androuin failed to follow the very methodology he purported to lay out for analyzing service-animal compliance issues. And because Androuin did not provide any methodology for analyzing whether Shiloh is a service animal, the Court cannot consider whether Androuin reliably applied any methodology with respect to that testimony. As Cordoves has not made a sufficient showing for this factor, the Court must exclude Androuin's testimony regarding Shiloh's status as a service animal and service-animal compliance in its entirety because "there is simply too great an analytical gap between the data and the opinion proffered." Joiner, 522 U.S. at 146, 118 S.Ct. 512.

### C. Helpfulness

■ Expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID. 702(a). Expert testimony is helpful if it "concerns matters that are beyond the understanding of the average lay person," but expert testimony generally is not helpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262–63 (citations omitted). Thus, while "[a]n expert may testify as to his opinion on an ultimate issue of fact[,] ... [a]n expert may not ... merely tell the jury what result to reach." Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir.1990) (alterations added; citations omitted). Similarly, an expert "may not testify to the legal implications of conduct; the court must be the jury's only source of law." Id. (citations omitted).

■ Androuin's testimony explaining the ADA service-animal regulatory scheme is not helpful because it consists entirely of impermissible legal standards. Experts are not permitted to explain to the jury what the applicable legal standards are. See Montgomery, 898 F.2d at 1541; Burkhart, 112 F.3d at 1213 ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone

to instruct the jury on the relevant legal standards." (citation omitted)). For almost half of his Declaration (*see* Decl. 5–11), Androuin quotes and summarizes relevant statutory provisions, regulations, and regulatory guidance materials. This entire swath of the Declaration is not helpful to the jury because it is nothing more than impermissible legal standard testimony. *See Pleasant Valley Biofuels, LLC,* 2014 WL 2855062, at *5 (excluding expert testimony reciting legal standards because "[a]n expert witness may not testify as to the state of the law . . .; this is the Court's duty." (alterations added; citation omitted)).

▮ Similarly, legal conclusions are scattered throughout Androuin's testimony. "[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart,* 112 F.3d at 1212–13 (alteration added); *see also Montgomery,* 898 F.2d at 1541. If testimony "track[s] the language of the applicable statute" or uses a term that "has a specialized legal meaning that is more precise than the lay understanding of the term," the testimony is an impermissible legal conclusion. *Burkhart,* 112 F.3d at 1212 (citing *Torres v. County of Oakland,* 758 F.2d 147, 151 (6th Cir.1985)) (alteration added).

In the Declaration, Androuin states, "Shiloh meets the statutory and regulatory criterion that he is individually trained to do work or perform tasks for an individual with disabilities, and is thus a service dog for Ms. Cordoves." (Decl. ¶ 9). This statement is rife with impermissible legal conclusions: not only does it tell the jury what result to reach, but it also is couched almost entirely in the language of the applicable regulations. At his deposition, Androuin also stated, "the people that in-

teracted with Shiloh, . . . they were violating the ADA in an interaction." (Nov. 6 Dep. 49:4–6 (alteration added)). This, too, is an impermissible legal conclusion. These and similar statements are not helpful to the jury and therefore are excluded. *See Burkhart,* 112 F.3d at 1213–14 (excluding expert testimony opining a police officer was "not . . . trained to proficiency in the requirements of the [ADA]" because "the phrase 'trained to proficiency' is lifted directly from the text of one of the regulations implementing the ADA" (alterations in original)); *Montgomery,* 898 F.2d at 1541 (holding district court abused its discretion in allowing expert to testify a party "had a duty to hire tax counsel").

Finally, Androuin cannot serve as a rebuttal expert. Androuin devotes a portion of his Declaration to critiquing the affidavit of Sally Mantrucchio, Defendants' expert witness on service-animal training. (*See* Decl. 13–15). As a general matter, expert testimony may be offered to rebut other expert testimony. *See* FED.R.CIV.P. 26(a)(2)(D)(ii). However, Androuin's critique of Mantrucchio's testimony reads less like an expert's opinion and more like a lawyer's *Daubert* motion to exclude Mantrucchio's testimony. Androuin argues Mantrucchio's opinions rest on "pseudo, otherwise non-existent, requirements" that run afoul of ADA regulations (Decl. 14); that is a legal argument for the lawyers to make, not Androuin. Further, Androuin's faulting Mantrucchio for not explaining the ADA regulatory scheme (*see id.*) flatly contradicts Rule 702's prohibition against legal standard testimony. Androuin's rebutting Mantrucchio's other conclusions and analyses (*see id.* 14–15) surely helps the jury—this is the nature of the adversarial system—but the Court cannot allow Androuin to do so because, as explained in Parts III.A.1 and III.B, *supra,* Cordoves has not shown Androuin is qualified and

employs a reliable methodology with respect to his testimony concerning Shiloh's status as a service animal.

## IV. CONCLUSION

For the foregoing reasons, Androuin's testimony does not survive Rule 702's exacting analysis, and so it must be excluded in its entirety. It is therefore

**ORDERED AND ADJUDGED** that the Motion [ECF No. 89] is **GRANTED.**