[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11445

Non-Argument Calendar

_____

MARK MANN,

Plaintiff-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,

E. PEREZ PEREZ,

M. REMIREZ,

PA Doctor,

C. CALDERON,

Dr.,

CENTURION OF FLORIDA, LLC,

A Florida limited liability company, et al.,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:17-cv-00241-AW-GRJ

———————————

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Mark Mann, a Florida prisoner, appeals the district court's grant of summary judgment to Cesar Calderon, M.D., on his claim that Calderon was deliberately indifferent to his serious medical needs. Because Mann has not established that Calderon's conduct, even if professionally negligent, rose to the level of deliberate indifference, we affirm the grant of summary judgment.

## I.

We review the grant of summary judgment *de novo*, viewing the facts in the light most favorable to Mann, the non-moving party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009.

Mann was incarcerated at Holmes Correctional Institution in May 2014, when he first complained of diarrhea and blood in his stool. Mann was 36 years old at that time, and there's no record he reported a family history of colon cancer. An abdominal x-ray was

essentially normal, and the symptoms appear to have resolved within a week. Approximately one week after he was seen, Mann reported he "had no more blood," and fecal occult blood tests came back negative. He was diagnosed with internal hemorrhoids. He was transferred to Tomoka Correctional Institution in July 2014.

In January 2015, Mann submitted a sick-call request complaining of stomach pains, diarrhea, and blood in his stool. He wrote that the symptoms were similar to ones he first experienced ten or eleven months earlier. A nurse saw him and recommended a physician evaluation. He was seen by Dr. Calderon on January 29, 2015. Mann complained of having abdominal discomfort for two months and diarrhea, blood in his stool, and pain in his upper stomach that was worse when he ate. Calderon diagnosed Gastroesophageal reflux disease ("GERD") and ordered labs, an x-ray, and fecal occult blood tests. Calderon also prescribed Imodium and Protonix. The x-ray was essentially normal. The lab reports noted a hemoglobin level of 9.6 g/dl and a hematocrit of 33.6, which were below the normal range, indicating anemia. Calderon reviewed and initialed the lab reports on February 16, 2015.

On March 9, 2015, Mann submitted an inmate request asking about further tests on his stomach because he still had the "same problems" of stomach pain and "periodically passing blood." The next day, a medical clerk wrote back that his "lab work was reviewed by the MD who made no note that he needed to see you." The clerk advised that if Mann was still having issues he could

"return to sick call to be evaluated" and the nursing staff could go over the test results with him and answer his questions.

There's no record of another sick-call request until May 22, 2016, when Mann complained of extreme pain in his lower stomach for the past two weeks. Further evaluation and testing in the following weeks, including a CT scan, showed a mass in his colon and culminated in a diagnosis of Stage IV colon cancer. He had colorectal surgery and began chemotherapy.

In October 2017, Mann sued Dr. Calderon and others alleging that they were deliberately indifferent to his serious medical needs, in violation of Eighth Amendment rights. After counsel appeared on Mann's behalf in January 2019, and a period of discovery in which both parties proffered expert witnesses, the district court dismissed by stipulation of the parties any claims arising on or after May 15, 2016. Then, a magistrate judge recommended granting summary judgment as to all remaining defendants except Calderon. Calderon objected; Mann didn't. The district court overruled the magistrate judge's recommendation as to Calderon, and it granted summary judgment to the defendants on all remaining claims. Mann now appeals.

The sole claim before us on appeal is Mann's deliberate-indifference claim against Dr. Calderon. Calderon, in Mann's view, exercised deliberate indifference when he failed to refer Mann for further evaluation and treatment by a specialist, including a colonoscopy, and this significantly altered Mann's prognosis in the treatment of his colon cancer. He asserts that Calderon's decision to

treat him for GERD amounted to no treatment at all for his most severe symptom, colorectal bleeding, and that "any person with medical training should have ordered an immediate colonoscopy."

## II.

Prison officials violate the Eighth Amendment's bar on cruel and unusual punishments when they display deliberate indifference to serious medical needs of prisoners. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

A deliberate-indifference claim has both an objective component and a subjective component. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The claim requires an objectively "serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation marks omitted).

The plaintiff also must "show the prison official's (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks omitted); *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that the standard of deliberate indifference is consistent with recklessness in the criminal law). "Conduct that is more than mere

negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham*, 654 F.3d at 1176.

But "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *see Swain v. Junior*, 961 F.3d 1276, 1288 (11th Cir. 2020) ("Deliberate indifference is *not* a constitutionalized version of common-law negligence."). Deliberate indifference is about "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quotation marks omitted). This is a difficult standard to meet: "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (cleaned up).

## III.

The district court properly granted summary judgment to Dr. Calderon. Although it is surely no comfort to Mann, no reasonable jury could conclude that Calderon was deliberately

21-11445                Opinion of the Court                7

indifferent to Mann's serious medical needs at Tomoka before May 15, 2016, the stipulated cut-off date.[1]

As relevant to Mann's claim, the record shows that Dr. Calderon performed a single examination of Mann on January 29, 2015, during which Mann complained of having abdominal discomfort for two months and diarrhea, blood in his stool, and pain in his upper stomach that was worse when he ate. Calderon diagnosed GERD, prescribed Imodium and Protonix, and ordered labs, an x-ray, and fecal occult blood tests. Calderon then reviewed and initialed lab reports reflecting that Mann had anemia on February 16, 2015. He did not order any further evaluation or testing.

Mann's expert, Heath Beckham, M.D., opines that it was "grossly negligent" for Dr. Calderon not to refer Mann's colorectal bleeding and other symptoms "for further evaluating by a specialist for consideration of colonoscopy or CT scan."[2] Dr. Beckham notes that the American Society of Gastroenterology recommends that patients under 50 with colorectal bleeding be "aggressively

---

[1] We assume without deciding that Mann had an objectively serious medical need at all relevant times.

[2] We aren't required to accept Mann's expert's bare legal conclusion that Calderon's conduct was "grossly negligent," which he says is equivalent to recklessness as the term "gross negligence" is defined in Florida law. See, e.g., Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."). We otherwise accept the expert's testimony as true for purposes of summary judgment.

evaluated" through a colonoscopy or other measures to determine the cause of the bleeding. He also asserts that fecal occult blood tests are "not a very good test to rule out colon cancer," and that "benign anorectal conditions such as hemorrhoids or fissures do not cause abdominal pain or a change in bowels habits and rarely cause anemia unless the bleeding is substantial and are not symptomatic of GERD."

We assume that Dr. Calderon's failure to refer Mann to a specialist or order a colonoscopy violated the applicable standard of care and could support a negligence claim. But as unfortunate as the results here are, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris*, 941 F.2d at 1505. And Mann's expert testimony doesn't establish conduct beyond negligence because it "at best allows an inference by the jury that a doctor should have perceived the risk of serious harm but not an inference that the doctor actually did perceive the risk and persisted in his course of treatment anyway." *Campbell v. Sikes*, 169 F.3d 1353, 1371–72 (11th Cir. 1999).

The record contains no evidence from which a jury could infer that Dr. Calderon knew of and "recklessly disregard[ed] a substantial risk of serious harm" to Mann. *Cottrell*, 85 F.3d at 1491. Rather, the evidence shows that Mann saw Calderon only once during the relevant period and that Calderon diagnosed GERD, ordered lab work and x-rays, and prescribed medication for Mann's irritable bowel. *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("[W]hen a prison inmate has received medical care,

courts hesitate to find an Eighth Amendment violation."). While the lab results indicated that Mann had anemia, the other tests were apparently normal, and Mann was relatively young with no reported family history of colon cancer. Even Mann's expert doesn't dispute that GERD may cause at least some of the reported symptoms, and he acknowledges that benign conditions like hemorrhoids or fissures may cause bleeding and anemia, even if they do so only "rarely." In fact, Mann's prison records show that he had been diagnosed with internal hemorrhoids arising out of a bout of diarrhea and colorectal bleeding in May 2014. Those symptoms appear to have resolved largely on their own within a week.

The record contains no evidence that Dr. Calderon knew Mann continued to experience colorectal bleeding and other symptoms, or that such symptoms were indicative of cancer, between February 16, 2015, when he reviewed the lab results, and May 15, 2016. Although Mann notified prison officials that he continued to experience symptoms of abdominal pain and colorectal bleeding in March 2015, nothing in the record shows that Calderon was made aware of Mann's complaint or that Mann submitted a sick-call request again until after May 15, 2016, the stipulated cut-off date for Mann's claim against Calderon. As a result, the evidence fails to show that Calderon knew Mann's symptoms hadn't resolved, as they had back in May 2014, or that more aggressive evaluation and treatment was necessary.

In sum, Mann hasn't shown that Dr. Calderon, based on what he knew at the time, failed to respond to Mann's medical

needs "by conduct that is more than mere negligence." *Bingham*, 654 F.3d at 1176.  Mann's claim is essentially one of missed diagnosis or the failure to do additional testing, which isn't grist for a constitutional claim.  *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." (quotation marks omitted)).  That Calderon may have "fail[ed] to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" barred by the Eighth Amendment.  *Farmer*, 511 U.S. at 838.

For these reasons, we affirm the district court's grant of summary judgment to Dr. Calderon on Mann's claim of deliberate indifference.

**AFFIRMED.**